## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| NANIKKA TARRANT, KENNETH TERREL, SIDALEE TARRENT, JOHN DOE, and JANE DOE, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-20-00891-PRW |
| MATHEW PERRY, AARON GLASS, THE TOWN OF MAYSVILLE, and THE MAYSVILLE TOWN BOARD, in their official and individual capacities, | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendant Town of Maysville and Maysville Town Board's Motion to Dismiss (Dkt. 8), the Plaintiffs' Response in Opposition (Dkt. 11), and the Town Defendants' Reply (Dkt. 12). For the following reasons, the Defendants' Motion to Dismiss is **GRANTED**.

### *Background*[1]

Plaintiffs Nanikka Tarrant and Kenneth Terrel live in the Town of Maysville, a small town in southern Oklahoma.[2] Around 1:00 p.m. on May 31st, 2019, Maysville Police Officer Matthew Perry entered Ms. Tarrant's property. Ms. Tarrant voluntarily engaged

---

[1] At this stage the Court accepts the Plaintiff's well-pleaded allegations as true, so the account presented in this factual background reflects Plaintiff's account.

[2] This case is *Tarrant I*. A later-filed case—*Tarrant, et al., v. Perry, et al.*, CIV-20-01065-PRW—involving related plaintiffs, identical defendants, identical attorneys on both sides, and substantially similar claims is also pending before this Court.

Officer Perry in conversation for some period of time, then ended the interaction by telling Officer Perry that he was trespassing and asking him to leave. Officer Perry then stated that he smelled marijuana odors emanating from the residence and ordered Ms. Tarrant not to return to the residence. Police Chief Aaron Glass subsequently arrived on the scene and the officers discussed entering the residence to look for another individual who had outstanding arrest warrants. Chief Glass asked Ms. Tarrant if there was marijuana in the residence, to which Ms. Tarrant replied they needed a warrant to search the premises. The officers then arrested Ms. Tarrant. Ms. Tarrant asked why she was being arrested and refused to present her arms for physical restraint, at which point the two officers tackled Ms. Tarrant, physically forcing her to the ground and handcuffing her. During this physical arrest, Ms. Tarrant and Mr. Terrel's unborn child (Sidalee Tarrant) suffered injuries that ultimately resulted in a miscarriage.

Plaintiffs filed suit for money damages under 42 U.S.C. § 1983, advancing four claims: (1) that all Defendants committed an unlawful physical beating of Ms. Tarrant, in violation of the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment and an unreasonable search and seizure in violation of the Fourth Amendment; (2) that the Town, Town Board, and Chief Glass failed to adequately hire, train, and supervise the officers, creating a de facto policy that led to the officers' conduct against Ms. Tarrant, in violation the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment, the Excessive Force Clause of the Eighth Amendment, and the unreasonable searches and seizures guarantee of the Fourth Amendment; (3) that all

2

Defendants caused the death of a child, in violation of Title 12, § 1055 of the Oklahoma Statutes; and (4) damages on behalf of the Estate of Sidalee Tarrant.

Plaintiffs sued Officer Perry, Chief Glass, the Town, and the Town Board, but has not yet returned service for Officer Perry and Chief Glass. As such, the Town and the Town Board are the only defendants who have currently entered an appearance in this action. Now, these two Defendants seek to dismiss all claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### *Legal Standard*

When reviewing a Rule 12(b)(6) motion to dismiss, all well-pleaded allegations in the complaint must be accepted as true and viewed "in the light most favorable to the plaintiff."[3] Parties bear the "obligation to provide the grounds of [their] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[4] The pleaded facts must thus be sufficient to establish that the claim is plausible.[5] In considering whether a plausible claim has been made, the Court "liberally construe[s] the pleadings and make[s] all reasonable inferences in favor of the non-moving party."[6] However, when considering a Rule 12(b)(6) motion to dismiss, the Court also examines whether the claim fails as a matter of law despite sufficiently detailed

---

[3] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted) (alteration in original).

[5] *See id.*

[6] *Brokers' Choice of Am., Inc. v. NBC Univ., Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017).

factual allegations. Thus, the Court "may grant judgment as a matter of law under Federal Rule of Civil Procedure 12(b)(6) on the basis of an affirmative defense . . . when the law compels that result."[7]

### *Discussion*

The Defendants' Motion to Dismiss advances several different arguments regarding why the complaint should be dismissed, including arguments as to the specific claims raised under the Eighth Amendment, under Oklahoma's death-of-a-child statute, and whether any claims were even stated by Kenneth Terrel or the Estate of Sidalee Tarrant. However, the Court finds it necessary to only address the three arguments dealing with whether the Town and Town Board can be sued at all, as these three arguments correctly dictate the full dismissal of these two Defendants.

I.      *The Town Board in its Official Capacity*

To begin, the complaint charges both the Town of Maysville and the Maysville Town Board.[8] However, Defendants correctly argue that the Town Board, operating in its official capacity, is not a separate, legally-suable entity.

Rule 17(b) of the Federal Rules of Civil Procedure provides that a non-corporate entity's capacity to be sued is determined by the law of the state in which the district court is located.[9] Under Oklahoma law, a municipality is a "person" for purposes of § 1983

---

[7] *Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1341 (10th Cir. 2015).

[8] The Complaint names the "Maysville Town Council," but the entity managing the municipal government is correctly known as the "Town Board," so the Court adopts this vernacular.

[9] Fed. R. Civ. P. 17(b).

liability.[10] However, it is also well-established that a subdivision entity of a municipality cannot be sued under § 1983, because the subdivision entity has no "separate legal identity."[11]

Here, any official actions taken by the Town Board in its official capacity are fully synonymous with actions of the Town of Maysville itself. As such, the Town Board in its official capacity has no separate legal identity outside of the Town—any liability incurred due to the official actions of the Town Board is borne by the Town. Accordingly, the Town Board, in its official capacity, is a subdivision entity lacking a separate, suable identity, and must be dismissed from the action.

II.   *The Town Board Members in their Individual Capacities.*

The complaint also seeks to recover against the individual members of the Town Board for their "deliberate indifference to an obvious need for train and supervision," which allegedly "created a policy or de facto policy for the use of excessive force."[12] Defendants argue that any such claims should be dismissed, as the Plaintiffs failed to plausibly state claims against any individual board member in their individual capacity.

---

[10] *See Barnthouse v. City of Edmond*, 73 P.3d 840, 851 (Okla. 2003); *see also* Okla. Stat. tit. 51, § 152.

[11] *See Glover v. Oklahoma City*, 2021 WL 6066880, at *2 (W.D. Okla. Oct. 14, 2021); *Chester v. Altus Police Dep't*, 2019 WL 748054, at *2 (W.D. Okla. Oct. 10, 2019); *see also Ketchum v. Albuquerque Police Dep't*, 1992 WL 51481, at *2 (10th Cir. Mar. 12, 1992) (finding a municipal police department not a suable entity since it lacks a legal identity apart from the municipality or county); *Shangreaux v. Midwest City Police Dep't*, 936 F.2d 583 (Table), at *2 (10th Cir. 1991) ("The police department of Midwest City is not a suable entity. Of course, to remedy this defect, Shangreaux needs only to amend his complaint to name Midwest City as a defendant.").

[12] Compl. (Dkt. 1), at 6.

To establish a § 1983 claim against public official, the Plaintiffs must sufficiently plead both that the board members acted under color of state law and that there was "some form of personal involvement on the part of the individual defendants."[13] It is not enough for the Plaintiffs to "show a defendant was in charge of other state actors who actually committed the violation."[14] They must "establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'"[15] And since the board members "must be personally 'involved in the constitutional violation'" to be liable,[16] the complaint must be specific enough about each individual board members' alleged role and responsibility to provide "fair notice as to the basis of the claims against him or her."[17]

Here, the complaint fails to name, identify, or describe the actions of the board members that the Plaintiffs seek to hold personally liable. The extent of their claims are conclusory recitations of elements—such as "deliberate indifference," failure to "train and supervis[e]," and "widespread town policy, practice and custom"—that they level against the Town Board as a whole. At no point do the Plaintiffs clarify what sort of personal involvement any or all of the board members had or what sort of deliberate, intentional acts any or all of the board members took to facilitate the alleged constitutional violations. And

---

[13] *Bruner v. Baker*, 506 F.3d 1021, 1026 (10th Cir. 2007) (citing *Coleman v. Turpen*, 697 F.2d 1241, 1246 n.7 (10th Cir. 1982)).

[14] *Serna v. Colo. Dep't of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006).

[15] *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 994–95 (10th Cir. 1996)).

[16] *Id.* (quoting *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006)).

[17] *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 921 n.9 (10th Cir. 2012) (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008)).

in their response to the motion to dismiss, the Plaintiffs cite no authority to support the idea that such brief and cursory allegations are sufficient to survive a 12(b)(6) motion. Instead, they argue for the first time that "as discovery and evidence is generated," they will uncover and demonstrate that "warnings were being provided and ignored" and that "individual council members . . . created an abusive police force" and "unleashed these officers onto the Maysville public."

But in resolving a 12(b)(6) motion the Court considers only the well-pleaded allegations in the complaint, not a plaintiff's post-hoc attempt to remedy deficit pleadings through additional allegations. And "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to allow a claim to proceed or allow a plaintiff to embark on a fishing expedition for evidence.[18] Accordingly, the Court finds that the Plaintiffs have failed to state a claim against any individual board member, so all claims against the Town Board in their individual capacity must also be dismissed.

III.    *The Town of Maysville.*

Finally, the Plaintiffs assert that the Town of Maysville is liable under § 1983 for the officers' alleged conduct due to its "fail[ure] to adequately hire, train and supervise" the officers[19] and its "deliberate indifference . . . creat[ing] a de facto policy or acceptance"

---

[18] *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[19] Compl. (Dkt. 1), at 7.

of the officers' alleged conduct,[20] which were allegedly "part and parcel of a widespread town policy, practice and custom which is further established by the involvement in, and ratification of, these actions by municipal supervisors and policy makers."[21] Defendants now argue that the Plaintiffs have failed to plausibly state a claim against the Town, as well, since the allegations in the complaint amount to a claim of vicarious liability.

It is well-established that a municipality cannot be held liable under § 1983 on a theory of *respondeat superior* or vicarious liability.[22] Thus, a municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents," and any claim must be dismissed unless the complaint demonstrates that "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."[23] Here, the minimum pleading standards still apply—a plaintiff must do more than offer a conclusory statement of "failure to train and to supervise" or "deliberate indifference."[24] A plaintiff must plead specific facts sufficient to support conclusions that there was a formal policy, an adopted custom, or specific actions taken in the course of failure to train or supervise—and also "a direct

---

[20] *Id.* at 8.

[21] *Id.* at 7.

[22] *See Waller v. City & County of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

[23] *Monell*, 436 U.S. at 694.

[24] *See Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010); *see also Bd. Of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410–12 (1997); *Dodds v. Richardson*, 614 F. 3d 1185, 1212 (10th Cir. 2010) (Tymkovich, J., concurring).

causal link between the policy or custom and the injury alleged" must be demonstrated.[25] When evaluating such a claim, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."[26] The heightened causal element "is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring."[27] And claims of deliberate indifference likewise carries "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action,"[28] requiring that "the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."[29]

Here, the complaint fails to survive even the minimal pleading standards, much less the heightened standards by which the Court reviews claims alleging failure to train and supervise or deliberate indifference. The complaint offers conclusory statements that regurgitate the key words identified in other successful actions. But beyond this, the Plaintiffs plead no facts. They plead no specific facts of action or inaction relating to the officers' allegedly deficit hiring, training, or supervision. They plead no specific facts

---

[25] *Waller*, 932 F.3d at 1284 (quoting *Bryson*, 627 F.3d at 788).

[26] *Id.* (quoting *Brown*, 520 U.S. at 405).

[27] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).

[28] *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Brown*, 520 U.S. at 410).

[29] *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

relating to any potential prior misconduct by the officers, the Town's knowledge of any such prior misconduct, or the Town's decision to ignore any such prior misconduct. Devoid of even the most basic factual pleadings, their complaint is also inevitably devoid of any attempt at demonstrating the required casual links between the alleged "de facto policy" and any knowledge or actions by the Town. In their response to the motion to dismiss, the Plaintiffs again offer no legal arguments or citation to authority in the face of Defendants' motion to dismiss on these grounds. Instead, they state—again for the first time—that the Town has "literally assigned" Chief Glass all authority to design policy and custom, and that they hope to cultivate their failure-to-supervise claim as discovery proceeds.

Yet once again, the Court can consider only the well-pleaded factual allegations present in the complaint when resolving a 12(b)(6) motion. When a claim is based on "mere 'labels and conclusions'" devoid of pleaded factual allegations, it cannot be maintained.[30] Since the Plaintiffs claims against the Town of Maysville are nothing more than generalized conclusions of vicarious liability lacking the pleaded facts necessary to support any inference about culpability or causation, their claims are barred as a matter of law and the Town must be dismissed from the action.

### Conclusion

When examining a complaint to resolve a 12(b)(6) motion, the Court "disregard[s] conclusory statements and look only to whether the remaining, factual allegations plausibly

---

[30] *Khalik*, 671 F.3d at 1191 (quoting *Twombly*, 550 U.S. at 555).

suggest the defendant is liable."[31] Here, disregarding the conclusory statements leaves nothing left as to Defendant Town of Maysville and Defendant Town Board. Between the Plaintiffs' failure to plead factual allegations that plausibly state a claim and the application of pertinent rules of law limiting what types of claims may proceed under § 1983, the Court finds that both remaining Defendants must be dismissed from the action entirely. Accordingly, the Defendants' Motion to Dismiss (Dkt. 8) is **GRANTED**.

      **IT IS SO ORDERED** this 31st day of March 2022.

                                                  _____
                                                  PATRICK R. WYRICK
                                                  UNITED STATES DISTRICT JUDGE

---

[31] *Id.*